IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| INSTITUTO MEXICANO DEL SEGURO SOCIAL, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 19-cv-857 |
| v. | § § | |
| STRYKER CORPORATION, | § § § § | |
| *Defendant*. | § § | |

IMSS' ORIGINAL COMPLAINT

The Instituto Mexicano del Seguro Social ("IMSS") complains of Stryker Corporation ("Stryker") as follows:

NATURE OF THE CASE

1. IMSS, an agency of the Mexican government, sues Stryker for bribing officials of the Mexican government to sell medical equipment.

2. For years, Stryker used bribery as an integral part of its world-wide marketing strategy. Stryker's conduct is well established. In 2013, the Securities and Exchange Commission concluded that Stryker had orchestrated an international bribery scheme to sell its medical products. This initial SEC action focused on bribes paid to government officials of at least five foreign nations, including Mexico. In a second SEC action, Stryker was found to have commited bribery in at least three additional foreign countries. Stryker's organized bribery scheme was not limited to foreign countries. Stryker has also confessed to bribing doctors within the United States to sell its products.

3. In Mexico, Stryker bribed officials of IMSS, a decentralized agency of the Mexican government that provides medical care to the majority of Mexicans. As part of its duties, IMSS conducts the purchases of medical products provided to Mexican citizens by various agencies of the Mexican government, including IMSS itself.

4. Stryker conducted the extensive, international scheme from its home office in Kalamazoo.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(4) because this action is between a foreign state pursuant to the Foreign Sovereign Immunities Act (the FSIA) and a citizen of the United States.

6. This Court has personal jurisdiction over Stryker because Stryker is headquartered in this District and conducted its international bribery scheme from this District.

7. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(1) because Stryker has its principal place of business in this District and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to IMSS' claims occurred in this District.

## PARTIES

8. IMSS is the Mexican Social Security Institute, a decentralized agency of the United Mexican States. IMSS therefore is a "foreign state" pursuant to the FSIA, and its officials are covered by the Foreign Corrupt Practices Act.

9. IMSS is responsible for purchasing medicine and medical products that are provided by the Mexican government to most Mexican citizens through various governmental agencies, including IMSS.

IMSS' ORIGINAL COMPLAINT—page 2

10. Stryker is a multinational corporation principally involved in the manufacture and marketing of medical devices. Stryker operates from its home office in Kalamazoo Michigan. Stryker also has subsidiaries that it controls in nations around the world, including in Mexico.

11. Stryker can be served on its registered agent, the Corporation Company, at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan 48170.

## FACTUAL BACKGROUND

*The Parties' Business Relationship*

12. IMSS is the main social-service agency of the Mexican government and provides public services to Mexican workers and their families. It was created in 1943 by order of the Mexican President, who continues to select IMSS's General Director.

13. IMSS provides health care services to tens of millions of people at hospitals that IMSS owns and operates throughout Mexico. The Mexican government funds IMSS through taxation and compulsory contributions.

14. IMSS also manages the purchases of medical supplies for other Mexican governmental agencies, including the Instituto de Seguridad y Servicios Sociales de los Trabajadores del Estado (ISSSTE), Petroleos Mexicanos (Pemex), and the Mexican military.

15. IMSS is the appropriate agency to bring the claims presented herein.

16. Stryker is an orthopedic medical device company. The company distributes its products both domestically in the United States and internationally in multiple countries.

17. Stryker includes a wholly-owned Mexican subsidiary that Stryker controls.

*Stryker's International Bribery Scheme*

18. For years, Stryker used bribes to sell its products to governmental agencies throughout the world, including within the United States and within Mexico.

IMSS' ORIGINAL COMPLAINT—page 3

19. Stryker's international bribery strategy has been established in actions by the SEC and the DOJ.

20. Between at least 2003 and 2015, Stryker paid bribes to government officials in Mexico and several other countries. During this period, as part of its international bribery scheme, Stryker paid millions in bribes to secure even greater amounts in illicit profits.

21. In Mexico in particular, Stryker, acting through its wholly-owned Mexican subsidiary, Stryker Mexico, S.A. de C.V., paid tens of thousands of dollars in bribes to illicitly obtain contracts with IMSS.

22. Stryker earned more than $2.1 million in profits on the contracts illicitly obtained in Mexico.

23. Many of the bribes were paid using a Mexican law firm as Strker's bag man. The law firm would include the bribe amounts on its invoices so that Stryker could conceal the bribes. Stryker Mexico recorded these improper payments as legitimate legal expenses in its books and records.

24. Stryker's bribery scheme was not limited to foreign countries. Stryker utilized the same method of illicit payments to sell its products in the United States. Stryker admitted to this domestic conduct and cooperated with United States authorities.

25. Stryker had direct knowledge and approved of its own illegal activities and the illegal activities of its wholly-owned subsidiaries throughout the world and specifically including Mexico.

26. In the alternative, Stryker acted with willful ignorance of the bribery scheme, using its wholly-owned subsidiaries as bagmen for payments that benefited Stryker.

27. To control the international scheme, Stryker personnel necessarily communicated with Stryker personnel around the world, including within Mexico. Stryker personnel would also travel to and from Mexico in support of the scheme.

### Effect on IMSS and IMSS' Damages from the Corruption

28. To obtain IMSS contracts, Stryker had to represent that it was complying with all IMSS' requirements, including that no improper inducements were being made to obtain the contract. Stryker's false, material statements and omissions to IMSS were fraudulent.

29. IMSS relied on Stryker's false, material statements and omissions to consummate business transactions with Stryker.

30. IMSS' reliance lasted longer than the bribes themselves. To obtain continued business with IMSS, Stryker had to represent that it had and would comply with Mexican law. Absent the false representations, IMSS would have been legally barred from contracting with Stryker. Therefore, IMSS relied on Stryker's representations when approving contracts for the purchase of Stryker products well after the expressly illicit conduct set out above.

31. Stryker's unlawful conduct harmed IMSS in numerous ways.

32. First, Stryker conspired with individual IMSS officials to damage IMSS.

33. Stryker induced the breach of fiduciary duties owed by IMSS officials as governmental officials and agents, and Stryker participated in, and profited from, those breaches.

34. Stryker bribed IMSS officials with funds culled from the profit that Stryker was reaping on IMSS contracts Stryker illegally obtained through bribery. The contract price, therefore, was inflated at least by the amount of the bribes. At a minimum, this amount represented economic harm to IMSS.

35. IMSS was damaged by the modification of IMSS' purchasing requirements to serve Stryker's, rather than IMSS', needs.

36. Additionally, Stryker's corrupt practices did violence to IMSS' contracting process and IMSS' ability to impartially evaluate potential medical device providers. Because the Stryker contracts were non-competitive as a result of the bribes, IMSS paid an artificially inflated price for the goods and services provided thereunder, resulting in lost opportunities for expenditures of those funds to address Mexican citizens' healthcare needs in other areas. The effects of these harms have reverberated throughout the organization.

37. The scope of IMSS' damages is also demonstrated by the amount of Stryker's profit. Despite its bribes and other improper payments, Stryker was still able to engender excessive profits.

38. Pursuant to Mexican and United States law, Stryker's breaches of the Mexican government procurement procedures voided Stryker's contracts, and therefore, Stryker should be required to return all proceeds received from IMSS, retaining *at most* the actual production cost of the equipment it delivered.

39. Stryker actively concealed its illegal conduct.

40. Stryker also subverted the fiduciary duties of the IMSS officials responsible for ensuring that IMSS' procurement procedures were followed. The same officials who should have challenged Stryker's illegal conduct were the officials who received Stryker's bribes. As a result, IMSS was unable to bring this lawsuit until the recent change in governmental administration.

## CLAIMS FOR RELIEF

41. Based on the foregoing facts, IMSS raises the following claims for relief:

*First Claim for Relief –Inducement of, and Participation in, Breach of Fiduciary Duties*

42. Stryker conspired with, and induced, IMSS officials to breach their fiduciary duties to IMSS. Stryker unduly benefited from those breaches of duties.

43. IMSS is entitled to actual damages and punitive or exemplary damages and any IMSS funds received as a result of the induced breaches.

44. IMSS is entitled to the avoidance of all contracts approved by a compromised IMSS official and a return of all consideration paid to Stryker apart from any proven *quantum meruit* benefits to IMSS.

45. This claim is brought pursuant to Mexican and United States law. The only substantive difference in the claims under the two laws is that Mexican law does not allow for the recovery of punitive damages.

*Second Claim for Relief—Fraud*

46. To obtain IMSS contracts, Stryker had to represent that it was complying with all IMSS' requirements, including that no improper inducements had or were being made. Following Stryker's first bribe, Stryker's statements to IMSS were false and material and included omissions of material facts.

47. IMSS relied on Stryker's false, material statements and omissions in order to consummate business transactions with Stryker. Absent the false claims, IMSS would have been barred from contracting with Stryker following the date of its first bribe.

48. IMSS was damaged as a result of Stryker's fraud.

49. IMSS is entitled to actual damages and punitive or exemplary damages.

50. IMSS is entitled to the avoidance of all contracts consummated as a result of Stryker's fraud and a return of all consideration paid to Stryker apart from any proven *quantum meruit* benefits to IMSS.

51. This claim is brought pursuant to Mexican and United States law. The only substantive difference in the claims under the two laws is that Mexican law does not allow for the recovery of punitive damages.

*Third Claim for Relief – Violation of the Law of Acquisitions, Leases and Services of the Public Sector (under Mexican law)*

52. Articles 50 and 60 of the Mexican Law of Acquisitions, Leases and Services of the Public Sector prohibit bribes to public sector officials.

53. Stryker violated these laws by bribing IMSS officials. IMSS is entitled to avoidance of the underlying contracts and return of all compensation paid to Stryker.

54. The Mexican Law of Acquisitions by governmental entities also prohibits false statements made to obtain government contracts and calls for the avoidance of contracts obtained in violation of its provisions. IMSS is therefore entitled to the avoidance of all contracts approved by a compromised IMSS official and a return of all consideration paid to Stryker.

*Fourth Claim for Relief—Breach of Contract*

55. All of the Stryker/IMSS contracts contain covenants prohibiting violations of anti-corruption and government contracting laws. Stryker breached those warranties in all of its IMSS contracts after the payment of the first bribe through violation.

56. IMSS is entitled to its actual damages.

57. This claim is brought pursuant to the Mexican law that governs the IMSS' purchases.

PRAYER FOR RELIEF

IMSS prays that this Court award it all the relief to which it is entitled under law or equity.

Dated: September 30, 2019

                 Respectfully submitted,

                 By: /s/ Mark Maney
                 Mark Maney
                 Attorney-in-Charge
                 Maney & González-Félix PC
                 Texas Bar No. 12898200
                 Federal ID: 11815
                 712 Main Street
                 Suite 2100
                 Houston, Texas 77002
                 Telephone: 713.806.2500
                 mmaney@maneylaw.com

                 ATTORNEYS FOR IMSS